# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

_____

|  |  |  |
|---|---|---|
| DENNIS KEITH DIXON, | : | |
| Plaintiff, | : | CIVIL ACTION |
| v. | : | |
| | : | No. 5:14-cv-4551 |
| STERN & EISENBERG, PC, et al., | : | |
| Defendants. | : | |

_____

## MEMORANDUM

**Defendants' Motion to Dismiss/Summary Judgment, ECF No. 7- Granted**

**JOSEPH F. LEESON, JR.**                                    **JUNE 19, 2015**
**United States District Judge**

## I.    Introduction

On July 31, 2014, Plaintiff Dennis Keith Dixon filed a complaint against Defendants

Stern & Eisenberg, PC and its employees, Does 1-50, for alleged violations of the Fair Debt

Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq.  Compl., ECF No. 1.  Plaintiff

subsequently filed an Amended Complaint.  Am. Compl., ECF No. 3.  Defendants filed a Motion

to Dismiss the Amended Complaint on January 6, 2015.  Mot. Dismiss, ECF No. 7.[1]  On May

14, 2015, this Court issued notice of its intent to convert the motion into one for summary

judgment and provided the parties with time to present any additional materials to support or

oppose summary judgment.  Order, May 14, 2015, ECF No. 18.  That time has now passed.  For

the reasons set forth below, summary judgment will be granted in favor of Defendants.

---

[1] Despite the fact that Plaintiff failed to timely identify and serve the Doe defendants, see Fed. R. Civ. P. 4(m) (requiring service within 120 days of the filing of the complaint), and because the Does defendants are allegedly employees of Defendant Stern & Eisenberg, PC, Defendant filed the Motion to Dismiss on behalf of all Defendants.

## II.   Factual Background

Plaintiff initiated the above-captioned action on July 31, 2014.  Compl.  He filed an

Amended Complaint on November 28, 2014.  Am. Compl.  The Amended Complaint alleges that

Defendants, whose law practice includes mortgage foreclosure debt collections, mailed six debt

collection notices, which Plaintiff received at his residence on August 1 and 2, 2013.  Id. at ¶¶

12-14.  Three of the six notices were addressed to "Heather E. Merritt," Plaintiff's spouse.  Id. at

¶ 14 and Ex. B.  Two of the notices addressed to Plaintiff's spouse and two of the three

addressed to Plaintiff were mailed to 639 Old Airport Road, Douglassville, Pennsylvania, and the

other notices to 639 Old Airport Road, Amity, Pennsylvania.  Id.[2]

The notices, titled "Combined Notice Under Act 6[3] and Act 91,[4]" state: "[t]his is an

official notice that the mortgage on your home is in default, and the lender intends to foreclose."

Am. Compl. Ex. A.  The notices identify Plaintiff as the homeowner, the property address as 639

Old Airport Road, Amity, Pennsylvania, and the mailing address as 639 Old Airport Road,

Douglassville, Pennsylvania.  Id.  Option One Mortgage Corporation ("Option One")[5] is listed as

the original lender.  Id.  The current lender is identified as Wells Fargo Bank, N.A. ("Wells

---

[2] Plaintiff states that Douglassville is also known as Amity.  Am. Compl. ¶ 11 ("Douglassville (a/k/a Amity)").

[3] "The essential purpose of Act 6 notice is to give the borrower the opportunity to cure any defaults that may have occurred in the loan agreement and to take advantage of various consumer protection devices extended by the Act before the home is seized."  Ayers v. Phila. Hous. Auth., 908 F.2d 1184, 1187 (3d Cir. 1990) (internal quotations omitted); see also 41 Pa. C.S.A. §§ 101, et seq.

[4] "Act 91 complements the procedural requirements of Act 6 by providing access to sources of funding for a debtor in order to prevent default."  Ayers, 908 F.2d at 1187; see also 35 Pa.C.S.A. §§ 1680.401c, et seq.

[5] Option One is frequently known as Sand Canyon Corporation ("Sand Canyon").  Am. Compl. ¶ 35, Exs. E-F.

Fargo") as Trustee for ABFC 2006-OPT1 Trust,[6] by its servicer Ocwen Loan Servicing, LLC

("Ocwen"). Id. The notices explain, inter alia, that Plaintiff can cure the default by paying the

past due amount of $13,040.31 within thirty days, that he may be eligible for financial assistance

through the Homeowner's Mortgage Assistance Program, and the possibility of foreclosure if the

default remained uncured. Id.

Plaintiff alleges that the Act 6/Act 91 notices contained material misrepresentations that a

debt was in default. Am. Compl. ¶ 14. He challenges Defendants' alleged failure to investigate

whether there was a recorded transaction creating the alleged debt before sending collection

notices. Id. at ¶¶ 17-28, 88-93 (contending that "Defendants carry the burden of producing a

lending 'transaction'"). The Amended Complaint claims that Defendants violated the FDCPA

by asserting there was a default when no debt could be proven in the absence of a "transaction,"

and by threatening a foreclosure that could not be legally undertaken. Id. at ¶¶ 79-84, 96-104,

108, 112.

Additionally, Plaintiff alleges that the notices gave him the impression that Wells Fargo

was in legal possession of all ownership rights in the property, but it would not be until several

months later, on November 20, 2013, and March 4, 2014, that the Assignments of Mortgage

---

[6] Exhibit H to the Amended Complaint is a copy of the Pooling and Servicing Agreement for the
ABFC 2006 OPT1 Trust dated July 1, 2006, between Asset Backed Funding Corporation,
depositor, Option One, servicer, and Wells Fargo, trustee. The Agreement states, inter alia:
> The Depositor, concurrently with the execution and delivery hereof, does hereby
> transfer, assign, set over and otherwise convey to the Trustee, on behalf of the
> Trust, without recourse for the benefit of the Certificateholders all the right, title
> and interest of the Depositor, including any security interest therein for the benefit
> of the Depositor, in and to (i) each Initial Mortgage Loan...; (ii) property which
> secured each such Initial Mortgage Loan...; and (vii) the rights of the Depositor
> under each Originator Mortgage Loan Purchase Agreement and the Mortgage
> Loan Purchase Agreement. Such assignment includes all interest and principal
> due to the Depositor or the Servicer after the Cut-off Date with respect to the
> Mortgage Loans.

Am Compl. Ex. H, Pooling and Serving Agreement pp. 1, 63.

were recorded in favor of Wells Fargo with the Berks County Recorder of Deeds. Am. Compl. ¶¶ 14, 30, Exs. E-F. Plaintiff contends that Option One/Sand Canyon did not own his mortgage and therefore could not have assigned it to Wells Fargo,[7] and that the assignments missed the closing date for the Trust by almost eight years. Id. at ¶¶ 68, 85, 109, 116, 119. He alleges that Defendants violated the FDCPA by conspiring with Wells Fargo and Ocwen to create and record invalid assignments in the land records in preparation of foreclosing on Plaintiff's property. Id. at ¶¶ 29-54 (complaining also about Defendants' alleged use of robo-signers).[8]

The Amended Complaint claims that the six Act 6/Act 91 notices contained four hundred fifty-six (456)[9] violations of the FDCPA, 15 U.S.C. §§ 1692d, e, f, g, and j. Am. Compl. ¶¶ 123-24. Plaintiff further alleges that Defendants caused two fraudulent Assignments of Mortgage to be recorded with the Berks County Recorder of Deeds, resulting in eighty-four (84)[10] additional violations of the FDCPA. Id. at ¶ 125. Plaintiff seeks statutory damages under the FDCPA for each[11] alleged violation, $150,000.00 in actual damages for pain and suffering, and other damages in the amount "allegedly" owed to cure his debt. Id. at ¶¶ 122-132.

On January 6, 2015, Defendants filed a Motion to Dismiss, asserting that Plaintiff failed to allege that he was prejudiced by receiving the pre-foreclosure notices and that his frustration

---

[7] Plaintiff's Exhibit D is a declaration by the President of Sand Canyon dated March 18, 2009, explaining the sale of Option One's mortgage loan servicing business effective April 30, 2008. Am. Compl. Ex. D.

[8] "Robo-signers" are persons alleged to have signed off, in the absence of a notary, on mortgage and foreclosure related documents without any personal knowledge of the files. See Grullon v. Bank of Am., N.A., No. 10-5427, 2013 U.S. Dist. LEXIS 48394, at *33 (D.N.J. Mar. 28, 2013); Sheenan v. Mortg. Elec., Registration Sys., Inc., No. 10-6837, 2011 U.S. Dist. LEXIS 88514, at *4-5 n.1 (D.N.J. Aug. 10, 2011).

[9] Plaintiff does not explain how he arrived at this number. See Am. Compl.

[10] Again, Plaintiff does not explain how he arrived at this number. See Am. Compl.

[11] Despite Plaintiff's request, the United States Court of Appeals for the Third Circuit has held that statutory damages under the FDCPA are awarded per lawsuit, not per violation. Goodmann v. People's Bank, 209 Fed. Appx. 111, 114 (3d Cir. 2006).

with the statutorily prescribed method is insufficient to state a claim. Mot. Dismiss 7-8.[12]

Defendants contend that the notices, sent in accordance with Acts 6 and 91, were not false,

deceptive, or misleading, and that their actions are not the type of conduct Congress intended to

prohibit in the FDCPA. Id. at 8-10 (citing 41 Pa. C.S. § 403(c)(3)). Defendants claim that their

first-hand knowledge of the "transaction" that created the debt is not a pre-requisite under the

FDCPA and, regardless, the transaction creating Plaintiff's debt was properly recorded on

August 1, 2006. Id. at 10-11 (asking this Court to take judicial notice of the mortgage dated May

26, 2006, and recorded on August 1, 2006, at Book 04934, Page 0931, Recorder of Deeds, Berks

County, Pennsylvania); Am. Ex. B, ECF No. 14. Defendants further state that the subject note is

endorsed to blank and that the holder of the note, Defendants' client, is entitled to enforce the

same. Id. at 11-12 (citing 13 Pa. C.S. § 3301). Finally, Defendants assert that they have not sent

"communications" as defined by the FDCPA, but merely complied with state requirements to

send pre-foreclosure notices to Plaintiff. Mot. Dismiss 13.

Plaintiff filed a response to the Motion to Dismiss on February 27, 2015. Resp., ECF No.

13. Plaintiff initially asserts that Defendant is a corporation and cannot proceed pro se. Id. at ¶¶

1-8 (citing 15 Pa.C.S. §§ 2922-2925). Next, he argues that Defendants' "*Notice* of Motion to

Dismiss..." should be denied because it does not comply with procedural rules in that it does not

contain numbered paragraphs or a wherefore clause. Id. at ¶¶ 9-19 (emphasis added). Finally,

Plaintiff objects to the Exhibits attached to the Motion to Dismiss as having no bearing on this

case. Id. at ¶¶ 20-29. Specifically, he alleges that Exhibits A and B are mortgage documents and

the Act 6/Act 91 notices are for a different property than that identified in the debt collection

---

[12] The page numbers referenced herein for the Motion to Dismiss are to those assigned by the
Clerk of Court to ECF No. 7.

notices at issue here.  Id.  Plaintiff argues that Exhibit C, the Adjustable Rate Note for the property at 639 Old Airport Road, was not mentioned anywhere in his Amended Complaint.  Id.

In his accompanying Memorandum of Law, Plaintiff argues that Wells Fargo is not a party in interest because Option One/Sand Canyon did not own any residential real estate mortgages to assign and, thus, Defendants had no legal basis to send the Act 6/Act 91 notices.  Resp. Memo, ECF No. 13, pp. 4-6, 14.  He asserts Defendants failed to address his pleading that no "transaction" creating the debt has been shown, then opposes Defendants' position that knowledge of the debt was obtained from its review of the title report and recorded mortgage.  Id. at pp. 7-9.  Plaintiff asks for proof of the existence of the debt.  Id. at pp. 12.  Lastly, he disagrees with Defendants' interpretation of and reliance on the UCC.  Id. at pp. 15-20.

On March 27, 2015, Defendants filed Amended Exhibits A and B.  Am. Exs., ECF No. 14.  Plaintiff filed a supplemental response objecting to these Exhibits.  Pl. Supp. Resp., ECF No. 15.  He claims that Amended Exhibit A is unrelated to Defendants' original Exhibit A, and is merely a redacted copy of Plaintiff's Exhibit A.  Id. at ¶¶ 1-4.  Plaintiff asserts that Amended Exhibit B, which contains the mortgage documents for the property at 639 Old Airport Road, is not probative to his claims.  Id. at ¶ 5.  Additionally, in both the response and supplemental response, Plaintiff suggests that defense counsel committed perjury and should be sanctioned.  Resp. ¶¶ 25-27; Pl. Supp. Resp. ¶¶ 2-4.

On May 14, 2015, this Court issued notice of its intent to convert the Motion to Dismiss into one for summary judgment and provided the parties with time to present any additional materials to support or oppose summary judgment.  Order, May 14, 2015.  On May 27, 2015, Plaintiff filed objections to the Court's notice.  Pl. objs., ECF No. 19.  Plaintiff repeats its objections to Defendants' self-representation, to Defendants' alleged failure to comply with

procedural rules in filing the Motion to Dismiss, and to defense counsel's alleged perjury in attaching the wrong exhibits to the Motion to Dismiss. Id. at pp. 1-2. Additionally, Plaintiff sets forth numerous grounds disputing Defendants' original Exhibit C and Amended Exhibits A and B. Id. at pp. 5-13. Plaintiff asserts that in light of these factual disputes that summary judgment should not be granted. Id.

Notably, on June 9, 2013, Plaintiff filed a complaint, in a separate action number before this Court, against Option One Mortgage Corporation, Ocwen Loan Servicing, LLC, and H&R Block, Inc., alleging breach of a promissory note and mortgage agreement for the property at 639 Old Airport Road. Dixon v. Option One Mort. Corp., et al., 5:13-cv-3199 (E.D. Pa. filed June 9, 2013) (Goldberg, J.). In an amended complaint dated October 2, 2013, Plaintiff alleged that Option One breached the agreement to loan him $252,000, that Defendants failed to record transfers of the note and mortgage, or to give notice of them to him, and that Defendants breached the agreements by recording the allegedly invalid assignment with the Berks County Recorder of Deeds. Id. at ECF Nos. 5, 17. On April 15, 2014, the amended complaint was dismissed. Id. at Order, April 15, 2014, ECF No. 17. The Honorable Mitchell S. Goldberg determined that Plaintiff's legal theory that the promissory note and mortgage are invalid was meritless and that the assignment was lawful. Id. (finding that "the promissory note contained the following clause: 'I understand that the Lender may transfer this Note'" and that "the Mortgage expressly contemplated that the 'Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower'"); Id. at ECF No. 21 (Order denying Plaintiff's motion for reconsideration.). Plaintiff initiated the instant action under the FDCPA less than four months later.

III.   **Standards of Review**

    A.    *Motion to Dismiss*

In rendering a decision on a motion to dismiss, this Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted). In Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the Supreme Court recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Court subsequently laid out a two-part approach to reviewing a motion to dismiss under Rule 12(b)(6).

First, the Court observed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Id. at 678. Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive the motion; "instead, 'a complaint must allege facts suggestive of [the proscribed] conduct.'" Id.; Phillips, 515 F.3d at 233 (quoting Twombly, 550 U.S. at 563 n.8). While Rule 8 of the Federal Rules of Civil Procedure, which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," was "a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Iqbal, 556 U.S. at 678-79 ("Rule 8 . . . demands more than an unadorned, the-defendant-unlawfully-

harmed-me accusation."  (citing <u>Twombly</u>, 550 U.S. at 555)); <u>see</u> Fed. R. Civ. P. 8(a)(2).  For

"without some factual allegation in the complaint, a claimant cannot satisfy the requirement that

he or she provide not only 'fair notice' but also the 'grounds' on which the claim rests."  <u>Phillips</u>,

515 F.3d 224, 232 (citing <u>Twombly</u>, 550 U.S. at 555 n.3).

Second, the Court emphasized, "only a complaint that states a plausible claim for relief

survives a motion to dismiss.  Determining whether a complaint states a plausible claim for relief

. . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience

and common sense."  <u>Id.</u> at 678.  Only if "the '[f]actual allegations . . . raise a right to relief

above the speculative level'" has the plaintiff stated a plausible claim.  <u>Phillips</u>, 515 F.3d at 234

(quoting <u>Twombly</u>, 550 U.S. at 555).  This is because Rule 8(a)(2) "requires not merely a short

and plain statement, but instead mandates a statement 'showing that the pleader is entitled to

relief.'"  <u>See id.</u>, 515 F.3d at 234 (quoting Fed. R. Civ. P. 8(a)(2)).  If "the well-pleaded facts do

not permit the court to infer more than the mere possibility of misconduct, the complaint has

alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  <u>Iqbal</u>, 556 U.S. at 679

(quoting Fed. R. Civ. P. 8(a)(2)).  "Detailed factual allegations" are not required, <u>id.</u> at 678

(quoting <u>Twombly</u>, 550 U.S. at 555), but a claim must be "nudged . . . across the line from

conceivable to plausible," <u>id.</u> at 680 (quoting <u>Twombly</u>, 550 U.S. at 570).  "The plausibility

standard is not akin to a 'probability requirement,'" but there must be "more than a sheer

possibility that a defendant has acted unlawfully."  <u>Id.</u> at 678 (quoting <u>Twombly</u>, 550 U.S. at

556).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it

'stops short of the line between possibility and plausibility of "entitlement to relief."'"  <u>Id.</u>

(quoting <u>Twombly</u>, 550 U.S. at 557).

The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be granted.  Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005) (citing Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)).

 

      *B.*      *Conversion of Motion*

In deciding a motion to dismiss, "the court may consider only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters of which the judge may take judicial notice."  2-12 Moore's Federal Practice - Civil § 12.34.  "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."  Fed. R. Civ. P. 12(d).

The court may take judicial notice of mortgage documents integral to the complaint without converting a motion to dismiss into a motion for summary judgment.  See Sun Joon Park v. M&T Bank Corp., No. 09-2921, 2010 U.S. Dist. LEXIS 24905, at *5-8 (D.N.J. Mar. 16, 2010).  However, "if facts that are alleged to be true in a complaint are contradicted by facts that can be judicially noticed, the contradicted facts in the complaint are not to be deemed as true upon consideration of the motion to dismiss" unless it is first converted into a motion for summary judgment.  Smith v. Litton Loan Servicing, LP, No. 04-2846, 2005 U.S. Dist. LEXIS 1815, at *17-18 (E.D. Pa. Feb. 4, 2005).  Additionally, in addressing issue preclusion, the court's "mere acknowledgment of a prior court's conclusions without considering the factual analysis of the court's decision does not convert a motion to dismiss into one for summary judgment." Owens v. Residential Credit Solutions, Inc., No. 14-1148, 2015 U.S. Dist. LEXIS 47051, at *9-12 (W.D. Pa. Mar. 19, 2015) (citing M & M Stone Co. v. Pennsylvania, 388 Fed. Appx. 156, 162

(3d Cir. 2010) (holding "that a prior judicial opinion constitutes a public record of which a court may take judicial notice")). But, the court may only take judicial notice of the existence of the opinion, and not for the truth of the facts asserted in the opinion, unless the motion is converted into a motion for summary judgment. M & M Stone Co., 388 Fed. Appx. at 162.

In the instant action, although the matter may be disposed of on the Motion to Dismiss, this Court acted out of an abundance of caution and provided notice to the parties of this Court's intent to convert the motion to dismiss into a motion for summary judgment.[13] Order, May 14, 2015 (citing Rose v. Bartle, 871 F.2d 331, 342 (3d Cir. 1989) (holding that a district court should provide notice of its intent to convert a motion under Rule 12(b)(6) into a motion for summary judgment and provide the parties with an opportunity to submit materials admissible in a summary judgment proceeding); Crown Cent. Petroleum Corp. v. Waldman, 634 F.2d 127, 129 (3d Cir. 1980) (determining that "litigants are entitled to 10 days notice before a Rule 12(b)(6) motion to dismiss may be converted into a Rule 56 motion for summary judgment")).

C.    *Summary Judgment*

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis

---

[13] This Memorandum offers alternative grounds for dismissal that are only available in a motion for summary judgment.

in original).  A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law.  Anderson, 477 U.S. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992).  An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Anderson, 477 U.S. at 257; Brenner v. Local 514, United Bhd of Carpenters and Joiners of Am., 927 F.2d 1283, 1287-88 (3d Cir. 1991).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once such a showing has been made, the non-moving party must go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue.  Fed. R. Civ. P. 56; Celotex, 477 U.S. at 324; Matsushita Elec. Indus. Co. v. Zenith Radi Corp., 475 U.S. 574, 586 (1986) (stating that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts").  The party opposing the motion must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Celotex, 477 U.S. at 323; see also Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992).  "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true."  Big Apple BMW, Inc. v. BMW of N. Am. Inc., 974 F.2d 1358, 1363 (3d Cir. 1992), cert. denied, 507 U.S. 912 (1993).

## IV.   Discussion

### A.   *Plaintiff's Procedural Objections*

Before discussing the merits of the Motion to Dismiss, this Court will address Plaintiff's procedural arguments. Plaintiff's first objection, that Defendant is a corporation and cannot appear pro se, is overruled because a licensed attorney from Defendant's firm has entered an appearance in this case. See 15 Pa.C.S. § 2924 ("A professional corporation may lawfully render professional services only through officers, employees or agents who are licensed persons."); Rowland v. Cal. Men's Colony, 506 U.S. 194, 201-02 (1993) (A "corporation may appear in the federal courts only through licensed counsel.").

Next, contrary to Plaintiff's contention, this Court finds that the Motion to Dismiss substantially complies with local and federal procedural rules. See F & M Distributors, Inc. v. Am. Hardware Supply Co., 129 F.R.D. 494, 500 (W.D. Pa. 1990) (denying the plaintiff's request to dismiss the defendant's motion to dismiss for failure to comply with local procedural rules). As required by the Local Rules, Defendants' Motion to Dismiss is accompanied by a proposed order granting the requested relief, "a brief containing a concise statement of the legal contentions and authorities relied upon in support of the motion," and a certificate of service. See E.D. Pa. L.R. 7.1. The motion also complies with Rule 7 of the Federal Rules of Civil Procedure in that it is made "in writing," "state[s] with particularity the grounds for seeking the order," and "state[s] the relief sought." Fed. R. Civ. P. 7(b). To the extent that "Rule 10(b)'s requirement of numbered paragraphs does apply generally to motions, see Fed. R. Civ. P. 7(b)(2), it does not apply to memoranda of law which may be filed in support of those motions." Palmer v. Sec. Nat'l Bank, No. 00-287, 2001 U.S. Dist. LEXIS 11473, at *9 (E.D. Pa. June 12, 2001). Furthermore, the purpose of numbered paragraphs "is to achieve clarity in the parties'

filings," and because Defendants' motion contains only three sentences, it is perfectly clear.  See id. (refusing to strike the defendant's motions, which consisted of a single paragraph, as "they did not need to be numbered").

Finally, Plaintiff's objections to the exhibits attached to the Motion to Dismiss are sustained in part and overruled in part.  Specifically, Exhibits A and B, which relate to property at 1204 East Sydney Street, Philadelphia, Pennsylvania, are not relevant to this case and will be stricken from the record.  Plaintiff's objection to Exhibit C, however, is overruled.  The Amended Complaint alleges that the Assignments of Mortgage are invalid because Option One/Sand Canyon did not own any residential real estate mortgages to have assigned to Wells Fargo.  Am. Compl. ¶ 109.  Exhibit C, the Adjustable Rate Note made between Plaintiff and Option One on May 26, 2006, regarding the property on Old Airport Road, is pertinent to this inquiry.  See Mot. Dismiss Ex. C ¶ 1 (providing: "I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder.'").

Having recognized her mistake in filing Exhibits A and B, defense counsel filed Amended Exhibits A and B, both of which pertain to the property on Old Airport Road.  Am. Exs., ECF No. 14.  Plaintiff's argument that there is no probative value in these Exhibits is frivolous as they form the basis of his claims.  Further, his contention that defense counsel committed perjury by attaching the wrong mortgage documents to the Motion to Dismiss and should be sanctioned for this mistake is without merit.  See United States v. Schwartz, No. 04-231, 2012 U.S. Dist. LEXIS 67661, at *18 (E.D. Pa. May 15, 2012) (concluding that an honest mistake does not rise to the level of perjury); Edwards v. Groner, 116 F.R.D. 578, 580 (D.V.I.

1987) (finding nothing in the record to warrant sanctions where counsel made a simple mistake and filed an amended pleading to correct the matter).

Plaintiff's attempt to avoid summary judgment by now alleging that he disputes, inter alia, the authenticity of Defendants' exhibits is insufficient. His objections are nothing more than an attempt to prolong this action. Significantly, as Plaintiff admits, Defendants' Amended Exhibit A is essentially a copy of Plaintiff's Exhibit A. Pl. Supp. Resp. ¶¶ 1-4. Also, much of Defendants' Exhibit C and Amended Exhibit B, are not only capable of being judicially noticed, but they contain many of the same mortgage documents Plaintiff attached as exhibits to his own pleadings in the 2013 action. See Dixon, 5:13-cv-3199 at Am. Compl. Exs. A-B, ECF No. 5. For Plaintiff to now dispute whether the Mortgage even exists, see Supp. Resp. ¶¶ 2-11, when he relied on this Mortgage in 2013 to claim breach of the same is disingenuous. See Jensen v. Hilton Newark Airport, No. 09-1290, 2011 U.S. Dist. LEXIS 49725, at *16 (D.N.J. May 10, 2011) (rejecting the plaintiff's "argument that summary judgment should not be granted because there is an issue as to whether Titan had a contract with Hilton" because his own opposition brief states that "'there was an agreement in place for Titan Defendants [sic] to perform snow removal and ice treatments to the property of Hilton Defendants'"). Regardless, as will be discussed below, Plaintiff has not "produce[d] evidence to show the existence of every element essential to its case" see Celotex, 477 U.S. at 323, so as to overcome the entry of summary judgment.

B.  *FDCPA Claim*

"The FDCPA provides a remedy for consumers who have been subjected to abusive, deceptive or unfair debt collection practices by debt collectors. The threshold requirement of the FDCPA is that the prohibited practices are used in an attempt to collect a debt." Piper v.

Portnoff Law Assocs., 396 F.3d 227, 232 (3d Cir. 2005) (internal citations omitted). "The term 'debt' means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5).

To establish an FDCPA claim, a plaintiff must show: "(1) he is a 'consumer' who is harmed by violations of the FDCPA; (2) the 'debt' arises out of a transaction entered into primarily for personal, family, or household purposes; (3) the defendant collecting the debt is a 'debt collector;' and (4) the defendant has violated, by act or omission, a provision of the FDCPA." Berk v. JPMorgan Chase Bank, N.A., No. 11-2715, 2011 U.S. Dist. LEXIS 109626, at *8 (E.D. Pa. Sept. 23, 2011) (citing 15 U.S.C.A. §§ 1692a-1692o). Section 1692d of the Act is specifically aimed at prohibiting harassment or abuse in the collection of a debt; section 1692e is intended to prevent debt collectors from making false or misleading misrepresentations; section 1692f is an attempt to curtail unfair practices by debt collectors; section 1692g is intended to guarantee that consumers receive adequate notice of a debt and their rights; and section 1692j is aimed at precluding the use of furnishing of deceptive forms in the process of collecting debts. 15 U.S.C. §§ 1692a-1692j.

*1.      Debt/Transaction*

The foundation for all of Plaintiff's FDCPA claims is that Defendants could not prove there was a collectible debt when they mailed the Act 6/Act 91 notices. He challenges Defendants' alleged failure to investigate whether there was a recorded transaction creating the alleged mortgage debt before sending collection notices. In the Motion to Dismiss, Defendants

argue that the FDCPA does not require it to have had first-hand knowledge of the "transaction" that created the debt and, regardless, the transaction creating the debt was properly recorded on August 1, 2006. Defendants further assert that because the Note is endorsed to blank, the UCC gives the holder of the Note, Wells Fargo, power to enforce payment.

First, as to whether Defendants had a duty to investigate before sending the Act 6/Act 91 notices, the case law is mixed. Cf. Campuzano-Burgos v. Midland Credit Mgmt., 550 F.3d 294, 301 (3d Cir. 2008) (holding that "attorney debt collectors warrant closer scrutiny [under the FDCPA] because their abusive collection practices 'are more egregious than those of lay collectors'") (quoting Crossley v. Lieberman, 868 F.2d 566, 570 (3d Cir. 1989)); Ludwig v. Apothaker & Assocs., P.C., No. 12-1129, 2012 U.S. Dist. LEXIS 190113, at *3-4 (E.D. Pa. July 31, 2012) ("The FDCPA does not require debt collectors to verify the status of the debt to be collected. An attorney is obligated to investigate the status of the debt only when the target of the collection disputes the debt. See 15 U.S.C. § 1692g."); Yentin v. Michaels, Louis & Assocs., No. 11-88, 2011 U.S. Dist. LEXIS 104711, at *28 (E.D. Pa. Sept. 14, 2011) (concluding that the FDCPA does not impose upon a debt collector any duty to investigate debts that it seeks to collect). Regardless, Defendants had sufficient knowledge of the transaction creating Plaintiff's debt and therefore satisfied any duty it may have had to investigate.

Next, this Court will take judicial notice of the mortgage, dated May 26, 2006, and recorded August 1, 2006, creating the debt. See Book 04934, Page 0931, Recorder of Deeds, Berks County, Pennsylvania. Despite Plaintiff's argument to the contrary, the recorded mortgage gave Defendants knowledge of the debt. See FTC v. Check Investors, Inc., 502 F.3d 159, 168 (3d Cir. 2007) (holding that a "transaction's status as a 'debt' under the FDCPA must be determined at the time that the obligation first arose").

Defendants are also correct that "Mortgage Notes . . . are negotiable instruments governed by article 3 of the UCC." Jobe v. Wells Fargo, N.A., No. 10-1710, 2013 U.S. Dist. LEXIS 184186, at *22-28 (M.D. Pa. Dec. 23, 2013) (citing JP Morgan Chase Bank, N.A. v. Murray, 63 A.3d 1258, 1264 (Pa. Super. 2013)). Pursuant to the UCC, "the transfer of a negotiable instrument from one party to another has the legal effect of 'vest[ing] in the transferee such rights as the transferor has therein.' 13 Pa. C.S.A. § 3201(a)." Id. at *23 (determining that although the mortgage debtor alleged that Wells Fargo had no right, title, or interest in his property to enforce, the original lender "transferred the Note to Wells Fargo by endorsing it in blank and physically transferring possession of the Note to Wells Fargo in accordance with the terms of a servicing and pooling agreement," which made Wells Fargo a holder in due course of the Note, entitled to all rights under the Note including the power to enforce payment). Plaintiff's mortgage provides: "The Note ... may be sold one or more times without prior notice to Borrower." Consequently, Defendants did not misrepresent the authority of Wells Fargo to pursue foreclosure, and the Act 6/Act 91 notices did not violate the FDCPA. See Grullon, 2013 U.S. Dist. LEXIS 48394 at *31-32 (finding that because the Bank was physically in the possession of the mortgage notes, it did not misrepresent its authority to foreclose on the property).

Moreover, if this Court accepts, as Plaintiff urges, that there was no "transaction" creating a "debt," the FDCPA is inapplicable. "A threshold requirement for application of the FDCPA is that the prohibited practices are used in an attempt to collect a 'debt.'" Check Investors, Inc., 502 F.3d at 168; 15 U.S.C. § 1692a(5). Plaintiff has the burden of establishing that the alleged obligation is a consumer debt under the FDCPA. Horton v. Trans Union, LLC, No. 12-2072, 2015 U.S. Dist. LEXIS 29564, at *15-16, 20 (E.D. Pa. Mar. 9, 2015) (granting the

defendant's summary judgment motion on the FDCPA claims regarding debt collection notices because the plaintiff, who alleged that she had no knowledge of the transactions made on the accounts and that the alleged debts arose from an identity theft, could not show that the accounts involved a consumer debt).[14] Accordingly, if there was no "transaction" to create the challenged debt, Plaintiff cannot sustain a claim under the FDCPA.

     2.    *Validity of Mortgage Assignments*[15]

Plaintiff alleges that Defendants violated the FDCPA by causing two fraudulent Assignments of Mortgage to be recorded in the Berks County Recorder of Deeds. To support his claim of invalidity, he alleges that they were recorded after Defendants mailed the Act 6/Act 91 notices, the assignments missed the closing date for the Trust by almost eight years, and Option One/Sand Canyon did not own any residential mortgages to have assigned to Wells Fargo.

Initially it is determined that Plaintiff lacks standing to contest the validity of the Assignment of Mortgage from Option One/Sand Canyon to Wells Fargo. See Potoczny v. Aurora Loan Servs., LLC, 33 F. Supp. 3d 554, 566 n.18 (E.D. Pa. 2014) (concluding that the debtor lacked standing to contest the validity of the assignment "[b]ecause any payments made to the holder of the note will discharge a debtor's liability under the note, the debtor cannot be harmed by paying the holder, even if the holder failed to comply with certain transfer requirements"); English v. Fannie Mae, No. 13-2028, 2013 U.S. Dist. LEXIS 167906, at *10-11 (D.N.J. Nov. 26, 2013) (explaining that a "[p]laintiff that is not a party to a contract lacks

---

[14] Plaintiff's contention that "Defendants carry the burden of producing a lending 'transaction'" is therefore incorrect and potentially fatal to his case. See Am. Compl. ¶ 28.
[15] Plaintiff's challenge to the use of robo-signers is tied to his claim that the Assignment of Mortgage was invalid and will be rejected for the reasons set forth in this section. See also Grullon, 2013 U.S. Dist. LEXIS 48394 at *31-32 (rejecting the debtor's challenge to the Bank's practice of robo-signing foreclosure related documents).

standing to sue for a violation of the contract," and "[i]n the context of a mortgage assignment, case law has held that a mortgagor, or borrower, does not have standing to allege that an assignment between two third parties is invalid").

Moreover, this Court is compelled to honor the decision of Judge Mitchell S. Goldberg of the United States District Court for the Eastern District of Pennsylvania that "Plaintiff's legal theory of invalidity is meritless," Dixon, 5:13-cv-3199 at ECF No. 17, ¶ 6. See Ciarrocchi v. Kennedy Mem. Hosp., 378 Fed. Appx. 239, 241 (3d Cir. 2010) (holding that although issue preclusion is an affirmative defense, the matter may be addressed sua sponte "'if a court is on notice that it has previously decided the issue presented'") (quoting Arizona v. California, 530 U.S. 392, 412-13 (2000)); Owens, 2015 U.S. Dist. LEXIS 47051, at *11 ("Simply stated, issue preclusion compels a later court to honor a decision of a matter that was actually litigated. Concert v. Northeast Foster Care Inc., 2012 U.S. Dist. LEXIS 186312, 2012 WL 7188850, at *11 (M.D. Pa. Oct. 18, 2012) (citing Dici v. Commonwealth of Pa., 91 F.3d 542 (3d Cir. 199[6])"); Inductotherm Indus. v. United States, No. 99-2451, 2002 U.S. Dist. LEXIS 14046, at *9 (D.N.J. 2002) (explaining that the court may raise issue preclusion sua sponte).

Furthermore, Plaintiff apparently confuses the recording of the Assignment of Mortgage with the assignment itself.[16] "The case law in Pennsylvania does not require mortgage assignments to be recorded." United States v. Green, No. 96-7275, 1998 U.S. Dist. LEXIS 4821, at *32 (E.D. Pa. 1998); Commonwealth, Pennsylvania Game Comm'n. v. Ulrich, 565 A.2d 859,

---

[16] Plaintiff's theory, that because Sand Canyon/Option One *no longer owns* residential real estate mortgages the assignments in 2013 or 2014 are invalid, is therefore misplaced because the declaration confirms that Sand Canyon/Option One owned residential real estate mortgages until April 30, 2008, two years after the assignment to Wells Fargo was complete. See Am. Compl., Ex. D. The Pooling and Servicing Agreement for the ABFC 2006 OPT1 Trust dated July 1, 2006, between Asset Backed Funding Corporation, depositor, Option One, servicer, and Wells Fargo, trustee, is further proof of the timely assignment. Am Compl. Ex. H.

862 (Pa. Commw. Ct. 1989) ("Pennsylvania recording laws, however, do not render invalid an unrecorded interest in land."). Pennsylvania Rule of Civil Procedure 1147(a)(1) also "does not require that a party have a recorded assignment as a prerequisite to filing a complaint in mortgage foreclosure." US Bank N.A. v. Mallory, 982 A.2d 986, 993 (Pa. Super. 2009). In fact, an Assignment of Mortgage may be filed after judgment in foreclosure is entered. Holler v. Fairbanks Capital Corp. Serv. Ctr. (In re Holler), 342 B.R. 212, 229-30 (Bankr. W.D. Pa. 2006) (finding that the timing of the filing of the mortgage assignment is only relevant to the validity and/or priority of the mortgage as against subsequent purchasers or mortgagees for valid consideration). "The recording of an assignment of mortgage has no legal import between the parties to the assignment as it is 'not a prerequisite to [a bank] having standing to seek enforcement of the mortgage via a mortgage foreclosure action.' The mere fact that an assignment goes unrecorded, even for an extended period of time, does not negate a validly executed assignment." Jobe v. Wells Fargo Bank, N.A., No. 10-1710, 2014 U.S. Dist. LEXIS 8035, at *16-17 (M.D. Pa. Jan. 23, 2014) (internal citations omitted); Souders v. Bank of Am., No. 12-1074, 2012 U.S. Dist. LEXIS 186082, at *28-29 (M.D. Pa. Dec. 6, 2012) (rejecting the debtor's claim that the defendants improperly and fraudulently assigned her mortgage in violation of an alleged "cutoff" date for mortgage assignment and finding that the debtor "lacks standing to raise these claims because the contract underlying her claims is the assignment of the mortgage, to which she is neither a party nor third-party beneficiary"). Accordingly, Defendants' recording of the Assignment of Mortgage with the Berks County Recorder of Deeds after issuing the debt collection notices had no bearing on the validity of the debt and does not violate the FDCPA.

3.	*The Notices*

Defendants argue that the Act 6/Act 91 notices, sent in accordance with state law, were not deceptive, false, or misleading, nor prohibited by the FDCPA. Plaintiff responds that because the assignment to Wells Fargo was invalid, Defendants had no legal basis to send the Act 6/Act 91 notices. Having determined that Plaintiff lacks standing to challenge the validity of the assignment and, regardless, that the Assignment of Mortgage from Option One to Wells Fargo was valid, Plaintiff's FDCPA challenges to the Act 6/Act 9 notices are without merit. See Castillo v. Zucker, Goldberg & Ackerman, LLC, No. 14-6956, 2015 U.S. Dist. LEXIS 33369, at *7-9 (D.N.J. Mar. 18, 2015) (holding that the defendant's pre-foreclosure notice and the notice of its motion for final judgment in the Superior Court foreclosure action "do not violate the FDCPA").

"[U]nder Pennsylvania law the mailing of notice required by Act 6 and 91 must precede the filing of a foreclosure action...." Salvati v. Deutsche Bank Nat'l Trust Co., N.A., 575 Fed. Appx. 49, 52 (3d Cir. 2014) (citing 41 Pa. S.A. § 403(a), 35 Pa. S.A. § 1680.403c(a)-(b)). "The FDCPA and Act 91 serve different purposes. The FDCPA is aimed at restricting the activities of debt collectors, whereas Act 91 ensures debtors are aware of the potential for state-funded assistance. While both statutes are often implicated in the debt collection process, not every inaccurate statement made during that process is actionable under the FDCPA." Benner v. Bank of Am., N.A., 917 F. Supp. 2d 338, 361-62 n.18 (E.D. Pa. 2013) (noting that the "state law remedy for a defective Act 91 notice is to stay foreclosure proceedings or dismiss the lender's foreclosure action for lack of jurisdiction" and where the defendant never initiated a foreclosure action the plaintiff had no remedy under state law for the alleged Act 91 misrepresentations). Moreover, there is no evidence that anything in the instant notices was false or deceptive.

Plaintiff also contends that one notice would have been reasonably sufficient and that three notices to each he and his wife was "unconscionable and abusive." Am. Compl. ¶ 122. Pennsylvania law dictates, "[n]otice of intention to take action as specified in subsection (a) of this section shall be in writing, sent to the residential mortgage debtor by registered or certified mail at his last known address and, if different, at the residence which is the subject of the residential mortgage." 41 P.S. § 403(b). Both Plaintiff and Heather Merritt are listed as mortgage debtors for the property on Old Airport Road. Two of the three notices addressed to Plaintiff and two of the three addressed to Ms. Merritt were mailed to Douglassville, Pennsylvania and the other to Amity, Pennsylvania. Am. Compl. Ex. B. The mortgage documents list both addresses, one as the property address and one as the mailing address. Defendants' notification sent to Plaintiff and Ms. Merritt at each address was therefore reasonable. Sending one additional notice per mortgage debtor does not violate the FDCPA.

C.    _Futile to Allow Leave to Amend_

For the reasons set forth above, this Court find that it would be futile to allow Plaintiff to file a third amended complaint. See Yentin, 2011 U.S. Dist. LEXIS 104711 at *28 (denying "on the grounds of futility, plaintiffs' request for leave to amend their complaint to state the claim that defendants neglected their 'duty to investigate' under the FDCPA"); Souders, 2012 U.S. Dist. LEXIS 186082, at *28-29 (finding futility and prejudice to the defendant in allowing the plaintiff to amend her claims because she lacked standing to claim that the assignment was fraudulent where she was not a party to the underlying contract (citing Alston v. Parker, 363 F.3d 229, 235-236 (3d Cir. 2004); Grayson v. Mayview State Hosp., 293 F.3d 103, 111 (3d Cir. 2002)).

**V.      Conclusion**

After review, it is determined that Defendants had knowledge of Plaintiff's debt, through a recorded mortgage, to satisfy any duty it may have had to investigate.  Also, not only does Plaintiff lack standing to contest the validity of the Assignment of Mortgage to Wells Fargo, he is collaterally estopped from raising this issue because this Court previously decided that the assignment was valid.  An independent review of the exhibits in this case, confirms that the Assignment of Mortgage was valid and that Defendants had the power to enforce payment on Wells Fargo's behalf.  Consequently, the Act 6/Act 91 pre-foreclosure notices sent by Defendants did not violate the FDCPA.  Summary judgment is entered in favor of all Defendants.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge